UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| GREGORY KELLY, #168422, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:10-cv-661 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| BLAINE LAFLER, | ) | **OPINION** |
| | ) | |
| Respondent. | ) | |

_____

This is a habeas corpus proceeding brought *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254.  On June 7, 2006, a Kent County Circuit Court jury found petitioner guilty of four counts of transporting a female for prostitution in violation of Mich. Comp. Laws § 750.459.  On August 10, 2006, Judge Dennis Leiber sentenced petitioner as an habitual offender, fourth felony defense, to four concurrent sentences of 15 to 40 years' imprisonment.  After unsuccessful attempts to overturn his sentences in state court, petitioner filed this habeas corpus petition.

Petitioner seeks federal habeas corpus relief on the following  grounds:

I.    Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when his trial attorney failed to object to the introduction of irrelevant and prejudicial evidence about petitioner's alleged violent acts and character.

II.   The trial court violated petitioner's rights under the Fourteenth Amendment's Due Process Clause when it failed to sever the four counts against petitioner.

III.    The trial court violated petitioner's rights under the Fourteenth Amendment's Due Process Clause in scoring offense variables 1, 4, and 9 of Michigan's sentencing guidelines and counsel's failure to object to the scoring of those offense variables denied Mr. Kelly his Sixth Amendment right to effective assistance of counsel.

IV.    Instances of prosecutorial misconduct violated petitioner's rights under the Fourteenth Amendment's Due Process Clause.

V.    Petitioner "was denied his 6th Amendment right to a fair trial where the court failed to enforce a sequestration order" and he "was denied his 4th Amendment right to due process where an inaudible tape was admitted at trial."

VI.    Petitioner was denied his Fourteenth Amendment right to due process by the cumulative effect of errors committed during trial as a result of being denied his Sixth Amendment right to effective assistance of counsel.

VII.    Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel.

(Petition at 8, 10, 12, 18-20, ECF No. 1, PageID.8, 10, 12, 18-20).

Respondent argues that the petition should be denied.   He argues that petitioner is not entitled to habeas corpus relief on Ground I because petitioner has not carried his burden under 28 U.S.C. § 2254(d)(1) of showing that the decision of the Michigan Court of Appeals rejecting those claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. (Response at 20-23, ECF No. 13, PageID.383-86). He states that Ground II is a state law claim and that federal habeas corpus relief is only available under 28 U.S.C. § 2254(a) on the ground that the person is in custody in violation of the Constitution or laws or treaties of the United States. (Response at 24-25, ECF No. 13, PageID.387-88). Respondent argues that Ground III is a state law claim and that it is barred by procedural default. He argues that the related claim of

-2-

ineffective assistance of counsel regarding the scoring of offense variables under Michigan's sentencing guidelines should be denied for lack of merit. (*Id.* at 26-30, PageID.389-93). Respondent asserts that the issues petitioner raised in his motion for postconviction relief, Grounds IV through VII, are procedurally defaulted by petitioner's failure to raise those issues on direct appeal, and petitioner has not shown cause and prejudice or actual innocence to overcome these defaults. (*Id.* at 9-14, PageID.372-77).

After review of the state-court record, the Court finds that all grounds raised in the petition lack merit.[1] Accordingly, the petition will be denied.

### Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).

---

[1]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

"State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an

-4-

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined

by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013)

### Findings of Fact

### A.   Circuit Court Proceedings

Petitioner was charged in Kent County Circuit Court with four counts of transporting a female for prostitution in violation of Mich. Comp. Laws § 750.459.[2] On February 24 and March 24, 2006, Judge Dennis Leiber conducted a hearing on petitioner's motion to sever. (ECF No. 18, 19). Judge Leiber denied petitioner's motion. He found that severance was not mandatory and that joinder was appropriate.

---

[2]A fifth count was dismissed on October 15, 2005, by the district court. (ECF No. 16 at PageID.76).

The offenses charged were related because they were based on the same conduct or transaction or series of connected acts or a series of connected acts constituting part of a single scheme or plan.  Testimony Teresa Mockerman provided during petitioner's preliminary hearing provided additional support for this finding.  Judge Leiber noted: "That is to say that the district court found probable cause to believe the defendant had committed the same offense alleged, in effect, in the same manner and, as Ms. Mockerman testifie[d], as the prosecution note[d] from the preliminary examination transcript at page 11, we went from Grand Rapids to Detroit every time to prostitute and just came back to Grand Rapids to get more girls, end quote." (ECF No. 19 at 12).  There was no substantial prejudice to petitioner.  Judge Leiber found that under Mich. Ct. Rule 6.120, case law, and the specific facts of this case, severance was not appropriate.  (*Id.*).

Petitioner's trial began on May 31, 2006, and it concluded with the jury's verdict on June 7, 2006 (Trial Transcripts (TT I-V, ECF No. 20-24), finding him guilty of all four counts of transporting a female for prostitution in violation of Mich. Comp. Laws § 750.459.  (TT V at 125-28, ECF No. 24).  The evidence against petitioner was overwhelming.  Petitioner's jury heard testimony from each of the four victims (Sara Schmuck, Misty Hesselink, Teresa Mockerman, and Bridgette Watkins) that petitioner transported them from Grand Rapids to Detroit for the purpose of engaging in prostitution on petitioner's behalf.  (TT II, 25-88, 108-31, ECF No. 21; TT III, 82-112, ECF No. 22).  Tara Bierdzycki, Summer Carter, Chyene Avery, and Melissa Smith provided further testimony in support of the prosecution's case against petitioner on the four charges.  (TT II, 89-107; TT III, 6-18, 48-81, 112-37; TT IV, 4-7, ECF No. 23).

An employee of the Dearborn, Michigan, Best Value Inn testified that petitioner frequented the hotel.  The area is also frequented by prostitutes.  Hotel records showed that petitioner paid cash for room 304 for the period from October 29 through November 13, November 18 through 26, November 27 through 29, and December 1 through 24, 2004.  He rented room 304 from December 25, 2004, through February 6, 2005, and May 2 through 27, 2005.  On occasion, petitioner rented a second room.  For example, from January 1 through 16 and January 21 through 27, 2005, petitioner was renting rooms 304 and 309.  (TT III, 36-47).

A police officer with the Wayne County Sheriff's Department testified that, on September 30, 2005, she was working for the special operation unit as an undercover decoy when she was approached several times by petitioner.  Petitioner attempted to persuade her to get into his car, and he offered phones and white powder as enticements. The officer gave a prearranged signal to backup officers and petitioner was subsequently arrested.  (TT III, 18-35).

Sergeant Marc Burns of the Kent County Sheriff's Department testified regarding the investigation of petitioner.  (TT IV, 11-56).  Police were looking for evidence of other types of offenses, but learned of petitioner's role in the transportation of women for prostitution through witness interviews.  Officers obtained the records from the Best Value Inn.  Police recorded petitioner's telephone calls from jail.  During one call petitioner asked "Silky" to go to his room at the Best Value Inn and pick up his belongings.  Silky did not know his room number.  Petitioner's response was 304, that's "hoe" spelled backwards.  (*Id.* at 21).  The jury heard a recording of petitioner's  phone

call with Silky in which they were using "some sort of street slang or Pig Latin" to convey coded messages.

The jury was provided with a transcript of the recording.   Judge Leiber emphasized, however, that the recording was the evidence, not the transcript.   He also instructed the jury that, if the jurors could not understand the recording, they were to ignore it.   (*Id.* at 25-26).

Petitioner's parole officer testified that petitioner was late for two of his monthly report dates.   Petitioner indicated that he was late because he had car trouble between Detroit and Grand Rapids.   Petitioner was able to pay court costs and fees, even though his parole officer was unable to verify his employment.   (*Id.* at 56-62).

A primary component of petitioner's defense strategy was focusing on the credibility of the four victims.[3]   In his opening statement, defense counsel emphasized the victims' criminal records, as well as the fact that all four women had been housed in the Kent County jail, suggesting they were able to collaborate on their testimony.   (*See* TT II, 24-25).   Counsel repeated that theme in his closing argument.   (*See* TT V, 88, 103).

Judge Leiber delivered his instructions.   Among other things, he carefully instructed the jury regarding the limited purposes for which other acts evidence could be considered.   (TT V, 115-16).   He emphasized: "[y]ou must not convict the defendant here because you think he's guilty of other bad conduct.   All the evidence must convince you that the defendant committed the alleged crimes, or you must find him not guilty."

---

[3]Another component of the defense strategy was making careful distinctions between testimony from the four women on which the charges against petitioner were based and testimony of other female witnesses, the latter being characterized as "fluff" or "decorations on the cake."   (TT V, 88-89).

(TT V, 116).  The judge's instructions emphasized that the jury must give each of the four

charges separate consideration:

> Now in this case, the defendant is charged with four counts of transporting
> a female for the purpose of prostitution.  These are all separate crimes, and
> the prosecutor is charging that defendant committed all four of these.  You
> must consider each crime separately in light of all the evidence in the case.
> You may find the defendant guilty on all four, or any combination of these
> four crimes, or not guilty of all of these crimes.

(TT V, 121).

The jury deliberated a short period of time before returning a guilty verdict on all

four charges.  (TT V, 124-28).

On August 10, 2016, Judge Leiber sentenced petitioner as an habitual offender,

fourth offense, Mich. Comp. Laws § 769.12, to concurrent terms of 180 to 480 months'

imprisonment on the four convictions that he is challenging in his habeas petition.

(Sentencing Transcript (ST) at 11-12, ECF No. 25; *see also* Judgment of Sentence

Commitment to Department of Corrections, found in Michigan Court of Appeals

Record, ECF No. 26).

### B.    Subsequent Proceedings

Petitioner, through appellate counsel, pursued an appeal in the Michigan Court

of Appeals.  Petitioner raised the first three issues that he is now raising in his habeas

petition.  (Defendant-Appellant's Brief at iv, Statement of Issues, found in Michigan

Court of Appeals Record, ECF No. 26).  On January 10, 2008, the Michigan Court of

Appeals issued its decision affirming petitioner's convictions and sentence.  (1/10/08

Op., ECF No. 26; *see  also People v. Kelly*, No. 272820, 2008 WL 108719 (Mich. Ct. App.

Jan. 10, 2008)).

-10-

Petitioner filed an application for leave to appeal in Michigan's highest court. He sought leave to appeal on the issues rejected by the Michigan Court of Appeals. (Defendant-Appellant's Application for Leave to Appeal at iv, ECF No. 27).  On May 21, 2008, the Michigan Supreme Court denied petitioner's application for leave to appeal.  (5/21/08 Order, ECF No. 27).

Petitioner filed a motion for postconviction relief in the Kent County Circuit Court.  The grounds that he raised in his motion for postconviction relief are now found in Grounds IV through VII of his habeas corpus petition.  (ECF No. 1-1, PageID.114-63; ECF No 3, PageID.245-332).  On August 7, 2009, Judge Leiber issued his opinion and order denying petitioner's motion.  (8/7/09 Opinion & Order, found in Michigan Court of Appeals record, ECF No. 28).  Judge Leiber found that petitioner should have raised the issues presented in his motion on direct appeal.  Petitioner failed to show cause and prejudice sufficient to overcome the default.  Judge Leiber rejected petitioner's argument claiming that his appellate counsel had been ineffective.  (*Id.* at 2).  Further, petitioner suffered no prejudice because all the issues he presented in his motion for postconviction relief lacked merit.  (*See* Opinion & Order at 2, ECF No. 28).

Petitioner sought leave to appeal to the Michigan Court of Appeals and the Michigan Supreme Court.  On November 6, 2009, the Court of Appeals denied leave to appeal.  (11/6/09 Order, ECF No 28).  On June 28, 2010, the Michigan Supreme Court denied leave to appeal.  (6/28/10 Order, ECF No. 29).

On July 9, 2010, petitioner filed his petition for federal habeas corpus relief. (ECF No. 1).

<u>**Discussion**</u>

**I.    Sixth Amendment right to Effective Assistance of Counsel**

In Ground I, petitioner argues that he was deprived of his Sixth Amendment right to effective assistance of counsel when his trial attorney failed to object to the introduction of irrelevant and unduly prejudicial evidence about petitioner's alleged violent acts and character.  He claims that he was denied the effective assistance of counsel by his attorney's failure to object to testimony regarding petitioner's violent actions toward the women who engaged in prostitution for his benefit.  (Petition at 6, ECF No. 1, PageID.6; Attachment Part 1 at 8-19, ECF No. 1-1, PageID.34-45).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Michigan Court of Appeals decided petitioner's claims of ineffective assistance of counsel on their merits, its decision on each claim must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington. See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decisions applied *Strickland* incorrectly. Rather, petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. 1372, 1375-77 (2015); *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see*

*McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015).  Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

The Michigan Court of Appeals applied the *Strickland* standard and rejected petitioner's claims for lack of merit:

> On the record before us, we find that most of the challenged evidence was relevant and properly admissible.  The prosecution was required to prove that defendant transported the victims for the purpose of prostitution, MCL 750.459. Evidence that defendant treated the victims, and other women who worked as prostitutes for him, with violence when they tried to keep their earnings or flee from him, assisted the prosecution in proving that defendant's purpose was to engage the women in prostitution.  Moreover, the record does not show that the probative value of this evidence was outweighed by unfair prejudice to the defendant. MRE 403.
>
> Nevertheless, some of the challenged evidence, specifically that defendant kicked a pregnant prostitute to induce her to miscarry, threatened to kill a prostitute for disrespecting him, and "dragged" another prostitute off the street and assaulted her, was likely inadmissible under MRE 404(b). These actions were not sufficiently similar to those alleged here so that they showed the existence of a common design or plan, *People v. Sabin (After Remand)*, 463 Mich. 43, 63; 614 NW2d 888 (2000).  Therefore, defense counsel probably should have objected to these three limited areas of testimony.  However, even though defendant's trial counsel's performance may have fallen below the objective standard of reasonableness with respect to this limited testimony, defendant cannot show that, but for his trial counsel's error, the outcome of the trial would have been different.
>
> . . .

There was overwhelming evidence of defendant's guilt, and defendant cannot show that but for the relatively insignificant error of his trial counsel, the outcome would have been different. *People v. Plummer*, 229 Mich.App 293, 307; 581 NW2d 753 (1998); *People v. Pickens*, 446 Mich. 298, 302-303; 521 NW2d 797 (1994).

*People v. Kelly*, 2008 WL 108719, at * 1-2.

The Court finds that petitioner has not shown that the decision of the Michigan Court of Appeals rejecting petitioner's claims of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review. 28 U.S.C. § 2254(d)(1).

## II.   Motion to Sever

Ground II is petitioner's claim that he was deprived a fair trial in violation of his rights under the Fourteenth Amendment's Due Process Clause when the trial court failed to sever the four counts.[4] (Petition at 8, ECF No. 1, PageID.8; Attachment Part 1 at 20-26, ECF No. 1-1, PageID.46-52). The Michigan Court of Appeals held that severance was not required. All charges involved "a single scheme to transport women from Grand Rapids to Detroit to engage in prostitution." 2008 WL 108719, at * 2. The opinion of Michigan Court of Appeals does not include a separate discussion of the Due Process Clause in connection with the severance issue. Nonetheless, the Court of Appeals upheld petitioner's convictions. *Id.* at * 2, 5.

---

[4]To the extent petitioner claims that the state courts erred in applying the Michigan Court Rules, his claim is not cognizable for purposes of habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The extraordinary remedy of habeas corpus lies only for a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Where a state appellate court rejects a federal claim without discussion, a rebuttable presumption arises that the state-court adjudication was on the merits. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). Petitioner has made no attempt to rebut the presumption. This Court must therefore conclude that the state appellate decision represented rejection of petitioner's claims on the merits. A state appellate decision on the merits of a federal claim is entitled to deference under AEDPA. *See Harrington v. Richter*, 562 U.S. at 97-98.

Under AEDPA, a federal court may grant a state prisoner's application for a writ of habeas corpus only if a state-court adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In this context, "clearly established law" signifies the holdings, as opposed to the dicta, of the United States Supreme Court. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). Lower court precedent does not suffice. *See Parker v. Matthews*,132 S. Ct. 2148, 2155-56 (2012); *Premo v. Moore*, 562 U.S. at 127. In the absence of a controlling holding of the United States Supreme Court, this court may not grant relief on a novel claim. *Premo*, 562 U.S. at 127 (novelty alone is a reason to reject a habeas claim); *see also Woods v. Donald*, 135 S. Ct. at 1377.

Petitioner's claim falters on the first step of the AEDPA analysis, as he cannot point to any holding of the United States Supreme Court recognizing the broadly stated right upon which petitioner's due-process claim depends. The Supreme Court has not held that a defendant in a criminal case has a constitutional right to a separate trial

on each of the charges against him.[5] *See Mayfield v. Morrow*, 528 F. App'x 538, 541-42 (6th Cir. 2013); *Rodriguez v. Jones*, 625 F. Supp.2d 552, 560-61 (E.D. Mich. 2009). Rather, the Court has recognized that "consolidation in one lawsuit of all issues rising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson*, 397 U.S. 436, 454 (1970) (Brennan, J., concurring). Joinder "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Carter v. Lafler*, No. 1:08-cv-849, 2011 WL 691579, at * 15 (W.D. Mich. Jan. 24, 2011) (quoting *Bellamy v. Bell*, No. 2:08-cv-14537, 2010 WL 3075003, at *10 (E.D. Mich. Aug. 5, 2010)).

Petitioner's Ground II does not provide a basis for federal habeas corpus relief. *See* 28 U.S.C. § 2254(d)(1).

## III.   Alleged Sentencing Errors and Ineffective Assistance of Counsel

In Ground III, petitioner claims that the trial court erred in assessing points under offense variables 1, 4, and 9 under Michigan's sentencing guidelines, and that he was deprived of his Sixth Amendment right to effective assistance of counsel at sentencing because his attorney failed to object to the alleged inaccurate scoring of

---

[5]In *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007), the Sixth Circuit cited a footnote in *United States v. Lane*, 474 U.S. 438 (1986) for the proposition that in order to obtain federal habeas relief, the petitioner was required to show that the "misjoinder of the counts 'result[ed] in prejudice so great as to deny a defendant his ... right to a fair trial." 475 F.3d at 777 (quoting *United States v. Lane*, 474 U.S. at 446 n. 8). The problem with the *Lane* footnote as authority in the context of a Section 2254 petition is that *Lane* was decided under Rule 8 of the Federal Rules of Criminal Procedure, not constitutional grounds. *See* 474 U.S. at 446. The footnote in *Lane* is dicta, and accordingly, cannot provide a basis for granting habeas corpus relief. *See Mayfield v. Morrow*, 528 F. App'x 538, 541-42 (6th Cir. 2013).

these offense variables.  (Petition at 10, ECF No. 1, PageID.10; Attachment Part 1 at 27-33, ECF No. 1-1, PageID.53-59).   The Michigan Court of Appeals held that petitioner's sentence fell within the appropriate sentencing guidelines range.  2008 WL 108719, at * 2.  Further, it rejected petitioner's argument that his Sixth Amendment right to effective assistance of counsel had been violated because his attorney did not object to the scoring of offense variables 1, 4, and 9.  *Id.* at *3-4.  Moreover, the Michigan Court of Appeals found that petitioner had not established a reasonable probability that, but for counsel's purported errors in failing to object the offense variables at issue, the result of petitioner's sentencing proceedings would have been different.  *Id.* at *4.

Petitioner's argument that the three offense variables should have been scored differently is not a basis for federal habeas relief.  *See e.g.*, *Doss v. Rivard*, No. 1-12-cv-1023, 2015 WL 5680151, at * 22 (W.D. Mich. Sept. 21, 2015).  The Michigan Court of Appeals determined the correct scoring of all offense variables at issue under Michigan law.  2008 WL 108719, at * 2-4.  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Ritchey*, 546 U.S. 74, 76 (2005); *see also Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013); *Yates v. Palmer*, 1:16-cv-338, 2016 WL 1425625, at * 2 (W.D. Mich. Apr. 12, 2016). The extraordinary remedy of habeas corpus lies only for a person held in custody in violation of the "Constitution or laws or treaties of the Unites States."  28 U.S.C. § 2254(a).

A sentence my violate due process if it is based on material "misinformation of constitutional magnitude." *Roberts v. United States*, 455 U.S. 552, 556 (1980). "To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was false, and (2) that the court relied on the false information in imposing the sentence." *Yates*, 2016 WL 1425625, at * 2 (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Petitioner has not demonstrated that the information before the sentencing court was materially false or that the court relied on materially false information in imposing sentence.[6] Further, petitioner has not addressed, much less carried his burden under 28 U.S.C. § 2254(d). Accordingly, petitioner has not established grounds for federal habeas corpus relief with regard to his sentence.

The Michigan Court of Appeals rejected petitioner's related claim of ineffective assistance of counsel. The "doubly deferential" standard of review applies to this issue. *See Woods v. Etherton*, 136 S. Ct. at 1151. "A State court's determination that a claim lacks merit precludes federal relied so long as 'fairminded jurists could disagree' on the correctness of the State court's decision.' " *Id.* (quoting *Harrington*, 562 U.S. at 101). "The State court decision must be 'so lacking in justification that there was an error

---

[6]The Michigan Court of Appeals adjusted the OV 1 score as to Ms. Schmuck because there was no supporting evidence, but held that "there was evidence in the record to support the scoring of OV 1 at 5 points for the offenses of the transportation of Watkins, Hesselink, and Mockerman." 2008 WL 108719, at * 3. The evidence supported the scoring of OV 4 for serious psychological injury. The Court of Appeals adjusted the score of OV 9 as to Schmuck, Hesselink, and Watkins because there was no supporting evidence. *Id.*

well understood and comprehended by existing law beyond any possibility for fairminded disagreement.' " *Woods v. Etherton*, 136 S. Ct. at 1151 (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). The decision of the Michigan Court of Appeals rejecting petitioner's claims of ineffective assistance of counsel at sentencing was not "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## IV. Due Process

In Ground IV, petitioner argues that instances of prosecutorial misconduct violated his rights under the Fourteenth Amendment's Due Process Clause. He argues that the prosecutor committed misconduct by eliciting testimony from witnesses regarding whether petitioner had been physically abusive or aggressive towards them, eliciting perjured testimony from Tara Bierdzycki, vouching for the character of Leo Chanard, describing petitioner as a bully who preys on women, and misstating Officer Tanner's testimony. (Petition at 12, ECF No. 1, PageID.12; ECF No. 1-1, PageID.116-20; ECF No. 1-2, PageID.117-130; ECF No. 3-1, PageID.246-49).

The scope of review in a habeas corpus action claiming prosecutorial misconduct is narrow. "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). This Court does "not possess supervisory powers over state court trials." *Id.* "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.* "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' " *Id.* (quoting *Darden*

*v. Wainwright*, 477 U.S. 168, 181 (1986)); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (" '[T]he appropriate standard of review for ... a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' ") (quoting *Darden*, 477 U.S. at 181).

To be grounds for habeas relief, petitioner must do more than simply show erroneous conduct. The alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *see Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012); *see also Bales v. Bell*, 788 F.3d 568, 578 (6th Cir. 2015) ("The Supreme Court has made abundantly clear that we may only consider whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " (quoting *Parker*, 132 S. Ct. 2153)).

Petitioner argues that the prosecutor committed misconduct in eliciting testimony from witnesses that petitioner had been physically abusive or aggressive towards them. The Michigan Court of Appeals found that the evidence that petitioner treated the four victims and other women who worked for him as prostitutes with violence when they tried to keep their earnings or flee from him was "relevant and properly admissible" in proving the charges against petitioner. 2008 WL 108719, at * 1. The fact that defense counsel had a basis for objecting to three instances described by witnesses, *Id.*, is not evidence of prosecutorial misconduct.

Next, petitioner argues that the prosecutor elicited perjured testimony from Tara Bierdzycki (ECF No. 1-2, PageID.126-27). Ms. Bierdzycki was a minor witness.

Her entire testimony covered only 30 pages, half of which were generated in cross-examination and recross-examination.  (TT III, 112-37; TT IV, 4-7).  She testified that she had worked as a prostitute for petitioner.  She stated that when petitioner went to sleep, she took back money that she had earned, and that when petitioner discovered the money was missing, he dragged her off the street and hit her in the face.  (TT III, 118-19).

Petitioner takes issue with Ms. Bierdzycki's testimony, on one day of the trial, that she had never observed petitioner striking other women (TT III at 122), and her testimony the next day that she told a detective that a pimp going by the name of "Scotty" had beaten up several women in the 1990s.  (TT IV, 4-5).  Petitioner reasons that the differences in the testimony from one day to the next indicates that "one of those stories has to be a lie."  (ECF No. 1-2, PageID.126).  His argument does not withstand scrutiny, however.  What Ms. Bierdzycki personally observed and what she told a detective are distinct matters.  In any event, there is no evidence that the prosecutor knowingly elicited perjured testimony from this witness.

Petitioner's argument that the prosecutor vouched for the character of Mr. Leo Channard (ECF No. 1-2, PageID.128) (citing TT II, 129), is meritless.  The federal courts have generally recognized two types of objectionable vouching.  *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d at 328 (treating the two aspects of vouching as part of a single standard).  The first type impermissibly places the government's prestige

behind the witness to bolster the witness's credibility. *Francis*, 170 F.3d at 550. In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *Id.* at 551. Neither type is at issue here.

Moreover, the Supreme Court has never recognized "vouching" as a constitutional level claim. "There is no 'clearly established Federal law, as determined by the Supreme Court of the United States' against 'vouching.'" *Vance v. Berghuis*, No. 1:09-cv-137, 2013 WL 3161326, at *23 (W.D. Mich. June 20, 2013) (quoting 28 U.S.C. § 2254(d)(1) and citing *Parker v. Matthews*, 132 S. Ct. at 2155).

There was no testimony at trial from anyone named Leo Channard. "Leo's" name came up in connection with an address at 1555 Plainfield Avenue. (TT II, 123, 129). The significance of the Plainfield address was that it had been a shared address at some time by Ms. Mockerman and Ms. Schmuck. Ms. Schmuck testified that she and Mockerman had never worked together to prepare false testimony against petitioner. Ms. Schmuck explained why she was testifying against petitioner:

> Q. This area, 1555 Plainfield Avenue, Ms. Mockerman's guardian is this person named Leo, correct?
>
> A. Yes.
>
> Q. And he operates this house almost like a halfway house for prostitutes to come in, get out of the business, and hopefully get on to a better life?
>
> A. Yes.

Q.     So you happened to be there at the same time as Ms. Mockerman?

A.     Correct.

Q.     I'm afraid the inference is going to be made that you have talk [sic] with these other girls and somehow have decided that for whatever reason that you're going to testify against defendant and testify untruly.  Is there any truth to that?

A.     No.

Q.     Did anyone – anyone talk about conspiring against Mr. Kelly?

A.     No.

Q.     Why are you here then?

A.     I just know that he's gotten young girls to go prostitute for him, an I don't want the next one to be my sister or any other little girl.

(TT II, 129-30).  The Court finds no prosecutorial misconduct.

Next, petitioner claims the prosecutor engaged in misconduct in his closing argument by misstating Officer Tanner's testimony.  (ECF No. 1-2, PageID.128-29) (citing TT III, 31 and TT V, 75-76).  Officer Tanner testified on cross-examination that petitioner did not tell her that he wanted her to go to work for him.  (TT III, 31).  In describing the incident between petitioner and Officer Tanner, the prosecutor argued, in relevant part: "I submit to you, ladies and gentleman . . . [petitioner's] intent wasn't to be another john or to be another trick.  His intent here was to get her to work for him. (TT V, 75-76).  The prosecutor's argument was well within the range of reasonable inference, given the facts and circumstances described by Officer Tanner.  The prosecutor did not engage in misconduct.

-24-

Petitioner claims prosecutorial misconduct in fragments of closing argument where he was described as a bully who preys on women. (ECF No. 1-2, PageID.127-28; 3-1, PageID.246-49) (citing TT V 68, 79). There were no objections to the challenged excerpts of the prosecutor's closing argument. (TT V, 68, 79). When viewed in context, the belatedly challenged arguments were not prosecutorial misconduct. *See Ross v. Pineda*, 549 F. App'x 444, 451 (6th Cir. 2013). The first instance occurred in the context of argument that petitioner's phone conversation with "Silky" was about, among other things, "having these other women work for Silky while [petitioner was] in custody." Petitioner was acting as a pimp, and he was able to transport females for prostitution because the women feared him. (TT V, 67-69). The other instance occurred in the context of argument emphasizing the vulnerability of the victims and how the evidence against petitioner on the four charges of transporting women for purposes of prostitution was overwhelming. (TT V, 79).

The Court finds no prosecutorial misconduct. Further, the jury was instructed that closing arguments are not evidence. "The trial court's instructions are generally presumed to have been followed." *Bales v. Bell*, 788 F.3d at 579 (citing *Penry v. Johnson,* 532 U.S. 782, 799 (2001) ("We generally presume that jurors follow their instructions.").

Even assuming that one or more of petitioner's claims of prosecutorial misconduct conduct had substantive merit, there was no due-process violation. The evidence against petitioner was overwhelming. "[I]t 'is not enough that the prosecutor's remarks were undesirable or even universally condemned"; rather, "[t]he

relevant question is whether the prosecutor's comments" infected the trial with unfairness. *Darden*, 477 U.S. at 181. The purported instances of misconduct did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 132 S. Ct. at 2153.

## V.   Sequestration and Recorded Telephone Conversation

In Ground V, petitioner argues that he "was denied his 6th Amendment right to a fair trial where the court failed to enforce a sequestration order," and that he was was "denied his 4th Amendment right to due process where inaudible tape was admitted at trial." (Petition at 18, ECF No. 1, PageID.18).

### A.   Sequestration

Petitioner's argument with regard to sequestration is patently meritless. He argues that, on October 14, 2005, Judge Donald Passenger, a state district court judge, issued a sequestration order and that Judge Dennis Leiber, a circuit court judge sitting in a higher court, failed to enforce the lower court judge's order. (Petition at 18, ECF No. 1, PageID.18; ECF No. 1-2, PageID.130-37).

The Rule 5 materials show that, on October 14, 2005, Judge Passenger was the presiding district court judge at petitioner's preliminary examination. Judge Passenger did not issue a sequestration order. He did, however, sequester witnesses at the preliminary examination hearing until after they had testified. (*See* Preliminary Examination (PE) at 3-4, ECF No. 16). Judge Passenger made clear on the record that, after each witness gave her  testimony, as a victim, she was entitled to remain in the courtroom. (*See* PE, 29; *see also* PE, 49, 58). Judge Passenger found probable cause

to bind over petitioner for trial on four of the five charges. He did not retain jurisdiction and he did not purport to bind any higher court with regard to sequestration or any other matter. (*See* PE, 74-77).

Judge Leiber rejected petitioner's argument. He did not violate any order to sequester witnesses. Moreover, petitioner had been apprised that, while the court could sequester witnesses within the courtroom, it could not do so inside the correctional facility. (Opinion & Order at 2, ECF No. 28). Petitioner has not established any basis for granting federal habeas corpus relief.

B.    Recorded Telephone Conversation

Petitioner argues that the trial court "abused its discretion" when it admitted Exhibit 17, the "audio tape of a conversation in Pig Latin" without a proper foundation. (ECF No. 1-2, PageID.135-36). This claim of evidentiary error under state law is not a basis for federal habeas corpus belief. 28 U.S.C. § 2254(a); *see Johnson v. Booker*, No. 2:11-cv-11134, 2014 WL 632360, at * 11-12 (E.D. Mich. Feb. 18, 2014) (argument that there was not an adequate foundation for admission of telephone calls made from the county jail was a state-law claim and not a basis for federal habeas corpus relief).

Petitioner makes a passing reference to the "4th" Amendment in his petition (ECF No. 1 at PageID.18), but there is no supporting argument. This alone defeats petitioner's claim. Issues adverted to in a perfunctory manner unaccompanied by some effort at developed argument are deemed waived. *See Wogenstahl v. Mitchell*, 668 F.3d at 330-31.

-27-

Petitioner's Fourth Amendment claim is also barred under *Stone v. Powell*, 428 U.S. 465 (1976). "In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim." *Tran v. Berghuis*, No. 1:06-cv-428, 2014 WL 4063832, at * 28-29 (W.D. Mich. Aug. 18, 2014) (citing *Stone v. Powell*, 428 U.S. at 494).

Moreover, petitioner's claim lacks merit, as he cannot establish a Fourth Amendment violation. The jail features prominent warnings regarding that conversations will be recorded. (TT IV, 22-23). Petitioner did not have any reasonable expectation of privacy in his jail telephone calls. *See United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002). The Court finds that Ground V does not provide a basis for federal habeas corpus relief.

## VI. Cumulative Effect

In Ground VI, petitioner argues that the accumulation of errors in the trial rendered his conviction fundamentally unfair. (Petition at 19, ECF No. 1, PageID.19; ECF No. 1-2, PageID.137-53). Under settled authority, a claim that the cumulative effect of errors rendered a trial fundamentally unfair is "not cognizable" after AEDPA. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011); *Moore v. Parker*, 425 F.3d 220, 256 (6th Cir. 2005). "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see Kissner v. Palmer*, No. 16-

1320, __ F.3d __, 2016 WL 3448153, at * 3 (6th Cir. June 23, 2016); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012). Moreover, because all the individual claims are without merit, petitioner cannot show that any cumulative error violated his constitutional rights. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

## VII. Sixth Amendment Right to the Effective Assistance of Appellate Counsel

In Ground VII, petitioner argues that his appellate counsel was constitutionally ineffective for his failure to raise the issues that plaintiff later raised in his motion for post-conviction relief. (Petition at 20, ECF No. 1, PageID.20; ECF No. 1-2, PageID.153-63; ECF No. 3-2, PageID.304-14). Claims of ineffective assistance of appellate counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*. *See Evitts v. Lucey*, 469 U.S. 387 (1985).

In the case of appellate counsel, petitioner has no constitutional right to have every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Appellate counsel acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). " 'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. at 751-52). Where appellate counsel is charged with ineffectiveness for failure to raise

a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

To overcome the presumption of competence of appellate counsel in these circumstances, petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.*; *see Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012) (Petitioner "must show the issues his appellate counsel failed to raise were 'clearly stronger' than the issues his counsel did raise – and that the state court lacked a reasonable basis for believing otherwise.") (citation omitted).  Appellate counsel has no duty to raise meritless issues. *Evitts*, 469 U.S. at 394; *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993).

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

Judge Leiber found that petitioner's appellate counsel had not been ineffective when he decided not to raise these issues on appeal. (Opinion & Order at 2-3, ECF No. 28).  The issues petitioner raised in his motion for postconviction relief were meritless, were not clearly stronger than the issues raised by appellate counsel, and there is not

-30-

a reasonable probability that inclusion of those issues would have changed the result of the appeal.

The decision of the state court rejecting petitioner's claim of ineffective assistance of appellate counsel easily withstands scrutiny under the doubly-deferential standard of review. The state-court decision rejecting petitioner's claims of ineffective assistance of appellate counsel was not " contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## VIII. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDonnell*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or

wrong. *See Slack*, 529 U.S. at 484.  Accordingly, the  Court will enter an order denying

petitioner a certificate of appealability.

## **Conclusion**

For the foregoing reasons, the petition will be denied.


Dated: <u>August 29, 2016</u>                              <u>/s/ Robert Holmes Bell          </u>
                                                            ROBERT HOLMES BELL
                                                            UNITED STATES DISTRICT JUDGE